# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CEDRIC IVORY,

                    Petitioner,

                                              CASE NO. 04-CV-71279-DT

v.                                     HONORABLE VICTORIA A. ROBERTS

ANDREW JACKSON,

                    Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING TRAVERSE MOTION FOR FACT-DEVELOPMENT AND/OR EVIDENTIARY HEARING, AND (3) DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS

Petitioner, an inmate at the Mound Correctional Facility in Detroit, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for second-degree murder and possession of a firearm during the commission of a felony which were imposed following a bench trial in the Wayne County Circuit Court in 1998. Petitioner was sentenced to consecutive terms of 20 to 40 years imprisonment and five years imprisonment on those convictions.

In his pleadings, Petitioner raises claims concerning the sufficiency of the evidence, the rejection of his provocation and self-defense arguments, the pre-sentence report and felony firearm enhancement notice, a victim impact speaker at sentencing, and the effectiveness of defense counsel. For the reasons stated below, the Court denies the petition for writ of habeas corpus, denies the traverse motion for fact-development and/or an evidentiary hearing, and denies a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

1

I.      **Facts**

Petitioner's convictions stem from the shooting death of his girlfriend, Alanna Napier, on Ilene Street in Detroit, Michigan on July 28, 1996.  At trial, Dwayne Glen testified that he was at his home on Ilene Street at 3:00 p.m. on July 28, 1996 when he heard a female voice say, "you want to fight, you want to fight."  He looked outside and saw Napier walking on the sidewalk toward his home conversing with Petitioner who was following her in a burgundy Buick LaSabre.  As they neared Glen's home, Petitioner got out of the car, took a few steps, and fired five to seven shots at Napier who fell to the ground.  Petitioner was 10 to 12 feet from Napier when he fired the gun.  Glen did not see Napier approach Petitioner or make threatening gestures toward him.  He could not recall whether Napier had anything in her hands, but said she might have had a purse.  After the shooting, Glen called 911 and went outside.  Two other neighbors, Janet Edwards and William Carr, also came outside.  Glen also testified that he recognized Petitioner and Napier from his place of employment, where they worked different shifts.

William Carr testified that he was at home on Ilene Street when he heard shooting outside his home.  He looked outside and saw a woman lying on the ground.  He went outside to help her and asked if she knew who shot her.  She responded that it was Cedric Bernard Ivory.  Mr. Carr also testified that the shooting caused damage to his home.  The police investigated bullet holes in his windows, a bullet on his floor, and a bullet lodged in his wall.

Detroit Police Officer John Harvin testified that he investigated the shooting scene. When he arrived, he observed the victim lying on the ground.  An anti-car theft "club"which was about 10 feet away from the victim and a woman's purse were taken into evidence.

The medical examiner's report indicated that Alanna Napier was 22 years old, was five

2

feet five inches tall, and weighed 129 pounds at the time of her death.  She died from two

gunshot wounds - one to the face and one to the upper left buttock, which caused severe internal

injuries.  There was not evidence of close range firing.  The manner of death was homicide.

The parties stipulated that Petitioner's mother, Pearl Ivory, would testify that Petitioner

borrowed her burgundy Buick on the day of the shooting around noon and that he did not return

home at 2:00 p.m. as expected.  When she was outside her Ilene Street home around 3:00 p.m.,

she heard five or six gunshots from down the street.  The police came to her home 20 minutes

later and said they were looking for Petitioner in connection with the shooting.  She knew Napier

as her son's friend or girlfriend.  Petitioner never returned home.  The next day, she received a

call from an unidentified male telling her where her car could be located.

Petitioner did not testify at trial, but his statement to police was read into the record.  In

that statement, Petitioner acknowledged shooting Napier, but claimed that he was provoked

and/or that he acted in self-defense.  Specifically, Petitioner stated that Napier had been his

girlfriend for about one year before the shooting.  On that day, he was driving in a burgundy

Buick LaSabre with Napier, drinking and smoking marijuana, when they got into an argument

and started hitting each other.  Napier pulled out a gun and he took it from her.  He then pulled

the car over and put the gun in the trunk.  He returned to the car.  They began to argue again and

she hit him with an anti-theft club.  Petitioner pulled the car over and told Napier that he loved

her.  She responded that she did not love him and had given him AIDS.  Petitioner then "lost it"

and jumped out of the car.  He did not know how many times he fired the gun at Napier or if she

said anything before he shot her.  Petitioner stated that he left the gun at the scene and fled in his

car.  Later that day, he learned that Napier had died.  He left town two days later because he was

confused and wanted to get money for a lawyer.  He testified negative for AIDS in August or September, 1996.

At the close of trial, the court found Petitioner guilty of second-degree murder and felony firearm.  In reaching this conclusion, the trial court relied upon the eyewitness testimony and rejected Petitioner's assertions of provocation and self-defense.

The trial court subsequently conducted a sentencing hearing.  At that hearing, Petitioner raised no material objections to the pre-sentence report.  The victim's mother (Mrs. Napier), brother (Mr. Jones), and grandmother (Mrs. Pierson) gave victim impact statements.  Petitioner also made a statement.  The trial court then sentenced Petitioner within the sentencing guidelines to a term of 20 to 40 years imprisonment on the murder conviction and a consecutive term of five years imprisonment on the firearm conviction.

## II.   <u>Procedural History</u>

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals, raising claims challenging the sufficiency of the evidence and the trial court's rejection of his provocation and self-defense claims.  The court affirmed his convictions.  *People v. Ivory*, No. 215203, 2000 WL 33401851 (Mich. Ct. App. Nov. 17, 2000) (unpublished).  Petitioner then filed a delayed application for leave to appeal with the Michigan Supreme Court, which was denied.  *People v. Ivory*, 463 Mich. 1015, 626 N.W.2d 415 (2001).

On May 7, 2001, Petitioner filed a motion for relief from judgment in the trial court, challenging the sufficiency of the evidence, the rejection of his self-defense or imperfect self-defense claim, the sufficiency of the enhancement notice, the use of a rebuttal witness, the extradition/detainer waiver, and the trial court's communication with a witness.  The trial court

4

denied the motion. *People v. Ivory*, No. 98-1847 (Wayne Co. Cir. Ct. Nov. 27, 2002). Petitioner

filed an application for leave to appeal with the Michigan Court of Appeals, which was denied

for "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)."

*People v. Ivory*, No. 245812 (Mich. Ct. App. Aug. 13, 2003). Petitioner also filed an application

for leave to appeal with the Michigan Supreme Court, which was similarly denied. *People v.*

*Ivory*, 469 Mich. 1002, 675 N.W.2d 593 (2004).

Petitioner dated the present petition for writ of habeas corpus March 25, 2004 and it was

filed by the Court on April 5, 2004. Petitioner asserts the following claims:

I.  There was insufficient evidence for the judge, as a trier of fact, to deduce
    that he was guilty of second-degree murder.

II.  The trial court erred when it did not find that he had legal justification for
    the homicide in self-defense.

III.  There was incorrect information in the pre-sentence investigation report
    utilized by the court in his sentence violating state and federal due process
    of law. Also, due process was violated where he was not given timely and
    adequate notice of the five-year felony firearm enhancement.

IV.  The trial court improperly allowed a male who was not related to the
    victim who had prior communication with the judge to speak during the
    crime victim impact statement violating state and federal due process of
    law.

V.  He was denied the effective assistance of counsel at trial, sentencing, and
    appeal thus violating the 6th and 14th Amendments of the federal
    constitution.

Respondent filed an answer to the petition on October 18, 2004 asserting that the claims should

be denied for lack of merit and/or based upon procedural default. Petitioner has filed a reply to

that answer. He has also filed a traverse motion for fact-development and/or evidentiary hearing.

**III.   Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's

6

decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

Lastly, this Court must presume that state court factual determinations are correct.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.     Analysis

### A.     Sufficiency of the Evidence Claims (Habeas Claims I and II)

In his first two habeas claims, Petitioner challenges the sufficiency of the evidence to support his conviction for second-degree murder and the trial court's rejection of his

7

provocation and self-defense arguments.  Respondent contends that these claims lack merit.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Because a claim of insufficiency of the evidence presents a mixed question of law and fact, *Huynh v. King*, 95 F.3d 1052, 1059 (11th Cir. 1996); *Maes v. Thomas,* 46 F.3d 979, 988 (10th Cir. 1995), this Court must determine whether the state court's application of the *Jackson* standard was reasonable.

Under Michigan law, the common law crime of murder is defined as second-degree murder and is punishable by up to life imprisonment.  *See* MICH. COMP. LAWS § 750.317. Second-degree murder is the unjustified and unexcused killing of a human being with malice. Conviction of second-degree murder requires proof of the following elements:  (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Goecke*, 457 Mich. 442, 463-64, 579 N.W.2d 868 (1998).  To prove malice, the prosecution must establish that the defendant has the intent to kill or do great bodily harm, or has created and disregarded a very high risk of death.  *Id*. at 466.  Circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense.  *People v. Plummer*, 229 Mich. App. 293, 299, 581 N.W.2d 753 (1998).

Applying the *Jackson* standard, the Michigan Court of Appeals concluded that there was sufficient evidence to support Petitioner's second-degree murder conviction and that the trial court did not err in rejecting claims of provocation and self-defense.  The court stated:

8

When determining whether sufficient evidence has been presented at a bench trial to sustain a conviction, we review the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992). The elements of second-degree murder are: (1) a death, (2) caused by the defendant's act, (3) with malice, and (4) without justification or excuse. *People v Goeke*, 457 Mich 442, 464; 579 NW2d 868 (1998). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*.

Viewing the evidence in a light most favorable to the prosecution, we find that the prosecution presented sufficient evidence to establish the elements of second-degree murder beyond a reasonable doubt. The victim died on July 28, 1996, of multiple gunshot wounds to the face and buttock. The death of the victim was caused by defendant. Defendant shot at the victim five to seven times with a handgun from a distance of approximately ten or twelve feet. After being shot, the victim told a witness at the scene that defendant was the one who had shot her. In addition, defendant made a statement to police admitting that he shot the victim.

Further, in this case, there is sufficient evidence present for a rational trier of fact to find that defendant committed the killing with malice. Defendant shot at the victim five to seven times with a handgun from a distance of ten to twelve feet, hitting her in the face and buttock. Additionally, a witness testified that the victim was walking away from defendant when he shot at her and that the victim made no threatening gestures toward defendant. Under these circumstances, it could be reasonably inferred that defendant's act of shooting at the victim with a handgun five to seven times at fairly close range is an act done with high probability that it will result in death and that it was done with wanton disregard for human life and an antisocial motive. *Id*., p 467.

We also reject defendant's argument that the trial court erred when it rejected a voluntary manslaughter verdict because there was a showing of adequate provocation. A homicide can be mitigated from murder to manslaughter if defendant kills in the heat of passion caused by adequate provocation, and before a reasonable time has passed for the blood to cool. *People v Pouncey*, 437 Mich 382, 388-389; 471 NW2d 346 (1991). Provocation is adequate if it would cause a reasonable person to lose control and act out of passion rather than reason. *Id*. pp 389-390. "The determination of what is reasonable provocation is a question of fact for the factfinder." *Id*. at 390. It was defendant's contention that this was an emotionally charged situation where he and the victim, who had been involved in a romantic relationship, had an argument the day of the shooting.

9

Defendant claimed that during the course of the argument, the victim told him that she gave him the AIDS virus. Defendant claimed that he "lost it" when the victim left the car after defendant was told this. Yet, the trial court found that this was not a situation which would have caused an ordinary person to act out of passion. Moreover, the trial court found defendant's evidence of provocation unbelievable, self-serving, and uncorroborated by credible witnesses. In fact, part of defendant's version was directly contradicted by another witness. The trial court resolved the credibility issues and factual conflict issues in a manner that rejected any manslaughter claim. This was entirely within the trial court's purview since it was sitting as the fact finder. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000); *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999).

In this case, the trial court did not find adequate provocation to reduce murder to manslaughter and found that the prosecutor proved the elements of second-degree murder beyond a reasonable doubt. The trial court's factual findings reflect that defendant had the requisite state of mind, specifically, the intent to do great bodily harm, when he fired five to seven shots at the victim. Furthermore, it rejected voluntary manslaughter because it did not find honest, reasonable, or adequate provocation present. The trial court's findings are amply supported by the record.

There was also sufficient evidence presented to support a finding that defendant killed the victim without any justification or excuse. At the time of the shooting, the victim was walking on the sidewalk and defendant was in a car. The victim never made any gestures toward defendant such as swinging, punching, or throwing anything and she did not have anything in her hands, except possibly a purse. After observing the witnesses and hearing the testimony, the trial court did not find that defendant was operating under an honest or reasonable belief that his life was in danger by the victim and rejected any claim of self-defense.

Accordingly, there was sufficient evidence presented for the trial court to find that defendant committed second-degree murder beyond a reasonable doubt.

*Ivory*, 2000 WL 33401851 at *1-2.

Having reviewed the record, this Court concludes that the Michigan Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or of the facts in light of the evidence. The testimony reveals that Petitioner and Napier were arguing while she was walking on the sidewalk and he was driving

10

along side of her in his car, that he exited his car and fired five to seven shots at her from a distance of 10 to 12 feet, that Napier was struck by gunshots to the face and buttock, and that she died from those injuries.  After the shooting, Petitioner fled the scene and left the state. From the testimony of Dwayne Glen and William Carr, as well as Petitioner's own police statement, the trial court could conclude beyond a reasonable doubt that Petitioner acted with the requisite intent and without legal justification or excuse so as to support his second-degree murder conviction.

Petitioner's insufficient evidence claim essentially challenges the inferences the trial court drew from the evidence at trial.  However, it is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983).  It is the job of the trier of fact, not a federal habeas court, to resolve evidentiary conflicts, and this Court must presume that the trier of fact resolved those conflicts in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  The Michigan Court of Appeals' decision in this regard was reasonable.  Habeas relief is not warranted on these claims.

B.    Procedural Default of Remaining Claims (Habeas Claims III - V)

Respondent contends that Petitioner's remaining claims concerning the pre-sentence report and enhancement notice, the victim impact speaker, and the effectiveness of defense counsel are barred by procedural default.  Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. A petitioner's procedural default in the state courts will preclude federal habeas review if the

11

last state court rendering a judgment in the case rested its judgment on the procedural default. *See Wainwright v. Sykes*, 433 U.S. 72, 85 (1977).  In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar. "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

Here, the Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner's applications for leave to appeal the denial of his motion for relief from judgment based upon his failure to comply with Michigan Court Rule 6.508(D).  That rule provides, in part, that a court may not grant post-conviction relief to a defendant on grounds that were already decided against the defendant, *see* Mich. Ct. R. 6.508(D)(2), or on grounds that could have been raised on direct appeal but were not, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom, *see* Mich. Ct. R. 6.508(D)(3).

Respondent asserts that the state appellate courts' decisions were based upon an independent and adequate state procedural rule.  *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000); *but cf. Abela v. Martin*, 380 F.3d 915, 922-23 (6th Cir. 2004) (Michigan Supreme Court's reference to MCR 6.508(D) may not be clear procedural default when a lower court

denies relief on the merits).  In this case, the record reveals that Petitioner first raised these claims in his state court motion for relief from judgment and the trial court denied relief based upon Petitioner's failure to establish good cause to excuse his failure to raise the claims on direct appeal of his convictions and actual prejudice, as required by Michigan Court Rule 6.508(D)(3).  Thus, the Court finds that the Michigan appellate courts' decisions were based upon an independent and adequate state procedural rule.  *See Simpson*, 238 F.3d at 407.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *See Coleman v. Thompson*, 501 U.S. 722, 753 (1991); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default.  Petitioner, however, has not shown that appellate counsel was ineffective. In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must  prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Id*. at 687.  Second, the petitioner must establish that the deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.

13

*Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 754 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  Petitioner has failed to show that by omitting the claims presented in his subsequent motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance.  Appellate counsel presented the insufficient

14

evidence claims on direct appeal in a well-reasoned brief. Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising other claims was deficient or unreasonable. Petitioner has failed to establish that he was denied the effective assistance of appellate counsel.[1]

This Court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the Court briefly notes that Petitioner's claims lack merit.

First, as to habeas claim III, Petitioner neither alleges nor establishes any error in the pre-sentence report upon which the trial court relied in sentencing him. Additionally, Petitioner's claim that he received inadequate notice of the sentencing enhancement on his felony firearm charge under Michigan law fails to state a claim which is cognizable upon federal habeas review. *See Tolbert v. LeCureaux*, 811 F. Supp. 1237, 1240-41 (E.D. Mich. 1993). It is well-settled that habeas relief may not be based upon a perceived violation of state law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Moreover, due process does not require advance notice that a trial on a substantive criminal charge will be followed by a habitual offender enhancement. Due process only requires that a defendant be given reasonable notice and an opportunity to be heard. *See Oyler v. Boles*, 368 U.S. 448, 452 (1962). Petitioner does not dispute that he had a prior felony firearm conviction which would warrant a sentencing enhancement, and the record reveals that Petitioner received notice of the enhancement by the

---

[1]To the extent that Petitioner asserts ineffective assistance of appellate counsel as a distinct habeas claim, that claim is not procedurally defaulted but nonetheless lacks merit for the same reasons set forth herein.

15

time of sentencing and had an opportunity to contest it.  Petitioner has thus failed to establish that he was denied due process.  *Id*. at 453-54.

Second, as to habeas claim IV, Petitioner has not shown that the trial court violated his rights at sentencing by allowing Mr. Jones to make a statement.  To the extent he relies upon state law, he fails to state a claim for federal habeas relief.  *See, e.g., Estelle*, 502 U.S. at 68. Moreover, the record reveals that Mr. Jones identified himself as the victim's brother and Petitioner offers no evidence to contradict this assertion.  There is also no evidence that the trial court and Mr. Jones had any improper communication or that any such communication affected the sentencing decision.  Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.  *See, e.g., Workman v. Bell*, 160 F.3d 276, 287 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not warrant habeas relief); *Zettlemoyer v. Fulcomer,* 923 F.2d 284, 301 (3rd Cir. 1991) (bald assertions do not provide a sufficient basis for an evidentiary hearing in habeas proceedings).

Third, as to habeas claim V, Petitioner has not established that defense counsel was ineffective under the standard set forth in *Strickland, supra*.  Petitioner fails to set forth with any specificity what trial counsel could have done to further investigate his case or how we was prejudiced thereby, particularly given the evidence at trial.  As noted, conclusory allegations do not provide a basis for habeas relief.  *See, e.g., Workman*, 160 F.3d at 287.  Petitioner similarly fails to establish that counsel was deficient or that he was prejudiced by counsel's conduct with regard to sentencing.  The record reveals that counsel reviewed the pre-sentence report and sought a sentence at the low end of the guidelines.  The trial court sentenced Petitioner within the guidelines and as mandated by statute.  Petitioner has not shown that defense counsel was

16

deficient or that he was prejudiced by counsel's conduct.  Petitioner has thus failed to establish prejudice as well as cause to excuse his procedural default.

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."  *Schlup*, 513 U.S. at 324.  Petitioner has made no such showing.  Petitioner's remaining claims are thus barred by procedural default, otherwise lack merit, and do not warrant habeas relief.

## V.   <u>Conclusion</u>

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v.*

17

*McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *Id*. at 336-37.

When a federal district court denies a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *See Slack*, 529 U.S. at 484-85.

For the reasons stated *supra*, the Court concludes Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his sufficiency of the evidence claims (habeas claims I and II).  The Court also concludes that reasonable jurists would not find the Court's decision that Petitioner's remaining claims (habeas claims III-V) are barred by procedural default debatable.  Additionally, Petitioner has failed to make a substantial showing of the denial of a constitutional right as to each of those claims.  No certificate of appealability is warranted in this case nor should Petitioner be granted leave to proceed on appeal *in forma pauperis*.  *See* Fed. R. App. P. 24(a).

Accordingly;

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**.  Given this determination, the traverse motion for fact-development and/or evidentiary hearing is also **DENIED**.  Lastly, a certificate of appealability and leave to proceed

18

on appeal *in forma pauperis* are **DENIED**.


                                        S/Victoria A. Roberts
                                        Victoria A. Roberts
                                        United States District Judge

Dated:  April 27, 2005

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on April 27, 2005. |
| s/Carol A. Pinegar |
| Deputy Clerk |